**BAKER & HOSTETLER LLP**
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201

*Attorneys for Plaintiff Seldat, Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SELDAT, INC. | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. |
| v. | )<br>) |
| BBC APPAREL GROUP, LLC | ) **COMPLAINT AND**<br>) **DEMAND FOR JURY TRIAL** |
| Defendant. | )<br>) |

Plaintiff Seldat, Inc. ("**Seldat**"), by and through its undersigned counsel, as for its Complaint against Defendant BBC Apparel Group, LLC ("**BBC**"), alleges as follows:

### NATURE OF ACTION

1. This is an action for Breach of Contract or, in the alternative, Quantum Meruit, arising from a contract between the parties where Seldat provided storage, shipping, and handling services to BBC concerning the movement of apparel goods. Despite Seldat having rendered those services in accordance with the terms of the contract, BBC has failed and refused to remit payment notwithstanding repeated demands by Seldat.

### PARTIES

2. Plaintiff Seldat is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business at 107 Corporate Boulevard, Suite A, South Plainfield, New Jersey 07080. Seldat is a citizen of New Jersey.

3. Defendant BBC is a domestic limited liability company with a principal place of business at 1407 Broadway, Suite 507, New York, New York 10018. BBC is a citizen of New York.

## JURISDICTION AND VENUE

4. The district court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the controversy exceeds $75,000.00 and is between a citizen of New Jersey and a citizen of New York.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1), (b)(2), and (c)(2) because Seldat has various locations in New Jersey, including a warehouse located at 1900 River Road, Burlington, New Jersey 08016, where Seldat provided services to BBC for which BBC has not paid; the legal injuries to Seldat occurred in this district; and BBC is deemed to reside in this district because it is subject to this Court's jurisdiction with respect to this action.

## FACTS

6. On or about December 12, 2012, Seldat and BBC entered into a written contract ("Contract").

7. In the Contract, Seldat agreed to provide storage, shipping, and handling services for BBC's apparel in exchange for payment from BBC. Seldat provided such services from its warehouse locations in Burlington, New Jersey and Rancho Cucamonga, California.

8. Paragraph 11 in the Contract provides, in relevant part:

> Seldat's payment terms are NET 30 DAYS. The 15 day credit period shall begin on the day following the mailing of the invoice. Past due invoices will be subject to a non-negotiable late charge of 10% per month. Failure to comply with these credit terms may also result in Seldat requiring payment in FULL PRIOR to acceptance of further shipments. Should credit be granted, depositor [BBC] agrees to make payments within the 30 day credit period and further agrees payments shall not be delayed or withheld due to alleged errors in billing, unsettled overcharge or loss and damage claims or because of other unpaid items which might be due the depositor [BBC].

9. Seldat performed under the Contract from December 2012 until December 2016.

10. Seldat provided invoices to BBC for each month in which Seldat performed services.

11. Beginning with services performed in April 2016 through December 2016, BBC failed to pay Seldat as required under the Contract.

12. On or about November 21, 2016, Eli Holi ("Holi"), the Production Coordinator for BBC, and Joanne Guglielmo ("Guglielmo"), the Senior Vice President, Finance & Accounting for Seldat, spoke by telephone about BBC's unpaid invoices that had accrued thus far. Holi explained that "cash flow issues" were to blame for BBC's inability to pay the outstanding invoices in full at that time. Holi specifically stated that "chargebacks," which are retailers' requests for compensation from suppliers when errors are made in supplying apparel, were not the cause of non-payment.

13. Thus, Holi agreed that BBC would resolve its unpaid invoices pursuant to a payment plan ("Payment Plan"). Guglielmo thereafter memorialized the Payment Plan in an e-mail dated November 21, 2016, which provided that BBC would: (1) provide evidence that it had paid the April 2016 invoice in full, as Seldat's records showed BBC's incomplete payment; (2) pay the July 2016 invoice in full within the week; (3) on December 15, 2016, pay $100,000 as partial payment for the August 2016 invoice; (4) on January 15, 2017, pay $150,000 for the balance of the August 2016 invoice and as partial payment for the September 2016 invoice; (5) on February 15, 2017, pay $150,000 as an additional partial payment for the September 2016 invoice; (6) on March 15, 2017, pay the balance of the September 2016 invoice and the October 2016 invoice in full; and (7) on April 15, 2017, pay the balance of all open invoices through February 2017.

14. On or about November 22, 2016, Holi met with Joe Shamie ("Shamie"), the Director of Sales for Seldat, at BBC's office and provided specific order information that would continue the business relationship between the parties through October 2017, asking Seldat to "strategize[] accordingly." At no point did BBC indicate that it would not pay Seldat for

services rendered pursuant to the parties' Contract and the Payment Plan, or that Seldat's performance had caused or would cause BBC's non-payment.

15. At the meeting on or about November 22, 2016, Holi provided Shamie with partial payment of the July 2016 invoice, despite the Payment Plan requiring full payment.

16. BBC promised Seldat in an e-mail dated December 6, 2016, from Holi to Elizabeth Golden ("Golden"), the Accounts Receivable Manager at Seldat, that he was "working on getting another check to you."

17. Thereafter, Guglielmo sent several e-mails to Holi reminding him about BBC's payment obligations under the Payment Plan. On or about December 12, 2016, Holi confirmed by e-mail to Guglielmo, "Hi, Yes. On track with the below schedule. Thank you."

18. On or about December 19, 2016, when the time had passed for BBC to pay the outstanding July and August 2016 invoices under the Payment Plan, BBB's Holi claimed in an e-mail to Guglielmo that "the person that signs the checks is not here today. I'm trying to find out if he'll be in this week or if he'll return after the holidays."

19. In response to further prompting from Seldat's Guglielmo about the past due payment under the Payment Plan, Holi wrote an-email to Guglielmo on or about December 20, 2016, stating, "We are committed to paying down our balance. I cannot send you a check if there's no one here to sign it."

20. In a later e-mail received on or about December 20, 2016, Holi wrote Guglielmo: "I committed myself and will prioritize paying Seldat with the goal of bringing our account to date. . . . Please recognize that it's the holiday season, many of our employees are away, the owners are on vacation and payment may take a little longer this time of year."

21. As of February 8, 2017, however, BBC still had not paid Seldat under the Payment Plan. Nonetheless, in an e-mail to Guglielmo, Holi reconfirmed BBC's obligation to pay Seldat, writing: "We're working on it."

22. Despite its repeated assurances, except for the partial payment of the July 2016 invoice, BBC failed to make any payment to Seldat on the past due invoices for services performed between April and December 2016 under the Payment Plan or otherwise.

23. While the Contract did not permit BBC to delay or withhold payment to Seldat "due to alleged errors in billing, unsettled overcharge or loss and damage claims or because of other unpaid items which might be due the depositor [BBC]" (Contract ¶ 11), Seldat worked with BBC to correct the invoices when such incidents occurred and revised the amounts due.

24. BBC never complained or objected to the amounts due or the services performed by Seldat until on or about February 27, 2017, when BBC stated that it would not pay as promised because of alleged deficiencies in the services provided by Seldat, which supposedly caused BBC to pay chargebacks to retailers. This was in conflict with both Holi's admission to Guglielmo in November 2016 that BBC's lack of cash flow – and specifically not chargebacks – was the cause of BBC's non-payment, as well as BBC's plan to continue its business relationship with Seldat through October 2017. In light of the foregoing and BBC's repeated unconditional promises to pay Seldat for past due invoices, BBC's statement in February 2017 is a manufactured pretext for its inexcusable failure to pay Seldat. In addition, paragraph 11 of the Contract prohibits BBC from withholding payment to Seldat for alleged deficiencies in Seldat's services.

25. The past due invoices for services performed between April and December 2016 total no less than $400,126.82.

26. Pursuant to Paragraph 11 of Contract, which provides that "**[p]ast due invoices will be subject to a non-negotiable late charge of 10% per month**," BBC owes Seldat $707,439.64 in late charges as of June 2018, for a total of no less than $1,107,566.46, with late charges continuing to accrue thereafter at the rate of ten (10) percent for each month BBC fails to pay Seldat.

## COUNT I

### Breach of Contract

27. Seldat repeats and realleges each and every allegation contained in paragraphs 1 through 26 as if fully set forth herein.

28. Seldat and BBC entered into the Contract, pursuant to which Seldat provided warehouse, shipping, and handling services to BBC in accordance with the terms provided in the Contract.

29. BBC was contractually obligated to pay Seldat for services performed under the Contract.

30. Seldat complied with its obligations under the Contract at all times, including from April through December 2016.

31. BBC breached the Contract by failing to pay Seldat for services performed between April and December 2016, totaling no less than $400,126.82.

32. BBC agreed in the Contract to pay a ten (10) percent late charge per month on past due invoices.

33. The ten (10) percent late charge per month on past due invoices totals no less than $707,439.64 as of June 2018, and will continue to accrue at the rate of ten (10) percent for each month BBC fails to pay Seldat.

34. As a direct and proximate result of BBC's breach of the Contract and failure to pay Seldat according to the terms of the Contract, BBC damaged Seldat in an amount of no less than $1,107,566.46, with late charges continuing to accrue thereafter at the rate of ten (10) percent for each month BBC fails to pay Seldat.

## COUNT II

### *In the Alternative*

### Quantum Meruit

35. Seldat repeats and realleges each and every allegation contained in paragraphs 1 through 34 as if fully set forth herein.

4825-9113-4311.3

36. Seldat conferred a benefit on BBC from April through December 2016. Specifically, Seldat provided storage, shipping, and handling services for BBC's apparel during this period.

37. Seldat conferred this benefit on BBC under circumstances that should have put BBC on notice that Seldat expected to be paid. Seldat provided invoices to BBC for every month in which services were performed, demanding prompt payment. Moreover, on numerous occasions, BBC promised to pay the past due invoices, including by entering into a Payment Plan with Seldat.

38. Seldat is entitled to recover from BBC the fair value of the benefit conferred upon BBC, in an amount no less than $1,107,566.46, with late charges continuing to accrue thereafter for each month BBC fails to pay Seldat.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Seldat respectfully requests that the Court enter judgment in its favor:

a) On Count I, in an amount no less than $1,107,566.46, with late charges continuing to accrue thereafter at the rate of ten (10) percent for each month after June 2018 that BBC fails to pay Seldat, together with interest, costs, attorneys' fees, and any other relief available on the proofs; or, in the alternative,

b) On Count II, in an amount no less than $1,107,566.46, with late charges continuing to accrue thereafter for each month that BBC fails to pay Seldat, together with interest, costs, attorneys' fees, and any other relief available on the proofs; and

c) Granting such other and further relief as the Court deems just and proper.

4825-9113-4311.3

## DEMAND FOR A JURY TRIAL

Plaintiff Seldat, Inc. hereby demands a jury trial on all issues herein pursuant to Federal Rule of Civil Procedure 38(b).

Dated this 6th day of June, 2018.

BAKER HOSTETLER LLP

By: _____
Daniel Buzzetta (025181994)
Jacqlyn Rovine (030362008)
45 Rockefeller Plaza
New York, New York 10111-0100
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
dbuzzetta@bakerlaw.com
jrovine@bakerlaw.com

*Attorneys for Plaintiff Seldat, Inc.*

## CERTIFICATION

I am not aware of any other action pending in any court or of any pending arbitration or administrative proceeding arising out of the facts stated herein.

_____
Daniel Buzzetta